(153 App. Div. 610.)

### KELLEY v. JEFFERSON POWER CO.

(Supreme Court, Appellate Division, Fourth Department, November 20, 1912.)

MASTER AND SERVANT (§ 243*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

> That an employé, killed from the bursting of a tank which he was filling with sulphuric acid to within 8 or 10 inches of the top, has been directed not to fill the tank to within 3 feet of the top, and that his violation of such instruction was the contributing cause of the accident, will not preclude a recovery against his employer, where he could tell how full the tank was only by climbing to the top, and his duties in pumping required him to be below, and such directions were apparently given merely to keep the tank from overflowing, and did not suggest to him that the tank was liable to give way if filled beyond 3 feet of the top.

> [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 682, 759–775; Dec. Dig. § 243.*]

> McLennan, P. J., and Lambert, J., dissenting.

Appeal from Trial Term, Jefferson County.

Action by Finton Kelley, as administrator, against the Jefferson Power Company. From an order setting aside verdict for defendant and granting a new trial, defendant appeals. Affirmed.

The action was commenced on the 11th day of January, 1911, to recover damages resulting from the death of plaintiff's intestate, alleged to have been caused solely through the negligence of the defendant. The defendant by its answer denied any actionable negligence on its part, but alleged that plaintiff's intestate was guilty of contributory negligence, and that he had assumed the risks of the employment. The defendant also alleged that before the commencement of the action the plaintiff duly settled with and discharged the defendant from all further liability in the premises.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

N. F. Breen, of Watertown, for appellant.
Burton B. Parsons, of Syracuse, for respondent.

KRUSE, J. I am not inclined to disagree with the Presiding Justice as to the correctness of the first request, relating to the negligence of the defendant, and what he says upon that subject. I think, however, that the second request charged was erroneous, even if the deceased had received the instructions not to fill the tank to with-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in 3 feet of the top, and he in violation of those instructions filled it to within 8 or 10 inches of the top, and that was the cause or the contributing cause of the accident, I think the plaintiff might still be entitled to recover, because he may have done ·so unconsciously, and without any negligence or want of care upon his part.

The only way the person whose duty it was to pump the acid into the tank could tell absolutely how full it was was by going to the top of the roof, where the tank was located, to measure or examine the tank. The pump was in the building below. It was not expected that the workman would be constantly at the tank to watch and see how full it was. His duties required him to be elsewhere. It was necessarily. a matter of judgment with him as to how full the tank would be from time to time, as he was pumping the acid into the tank.

Furthermore, there is nothing contained in the instructions which would necessarily suggest to him that the tank was weak, and was in danger of giving way if it was filled to a point beyond three feet of the top. Indeed, the evidence seems to indicate that the only purpose of giving the instructions was to keep the tank from overflowing, which it did occasionally.· The charge, as requested by the defendant, and as made by the judge, left out of consideration. entirely the question of the negligence of the deceased.

I think the order setting aside the verdict should be affirmed, with costs. All concur, except McLENNAN, P. J., and LAMBERT, J., who dissent.

McLENNAN, P. J. (dissenting). The trial court, by the order appealed from, has granted a new trial in this action because of two alleged errors committed upon the trial, as specified in the order, as follows:

First, that the court committed an error in charging the jury, as requested by defendant's counsel, in the following language:

"The jury must be satisfied by a fair preponderance of evidence, outside of the mere happening of the accident, as to the negligence of the defendant, and must be able to point out the particular negligence with reasonable certainty which caused the . accident, before they can find for the plaintiff in this case."

Second, that· the court was in error in charging, as requested, the following:

"If George Kelley, the deceased, received instructions from the foreman, McNutt, to not fill the tank to within 3 feet of the top, and in violation of those instructions he filled it to within 8 or 10 inches of the top, and that was the cause, or contributed to the cause, of the accident, or the injury, that then the plaintiff cannot recover." .

In order to determine whether the charging of these requests, or either of them, was error, it becomes necessary to refer to the facts concerning the accident causing the decedent's death. Plaintiff's intestate, a young man of the age of 18 years, was injured on the 16th day of November, 1910, while in the employ of defendant as an acid maker. at its sulphite mill at Herring, N. Y. He died as a result of such injuries on the 29th of November, 1910. The injuries were

caused by the fall of a large tank filled with sulphuric acid, weighing over 80 tons, which was supported above the roof of the acid plant by five steel girders, 24 feet in length, 15 inches in depth, and having a 6-inch face, resting at either end upon the wall of the building, which extended about 3 feet above the roof. There was evidence tending to show that the tank fell because the girders, or some of them, which supported it, gave way under the weight of the tank, which at the time was filled to within 8 or 10 inches of the top. Defendant's foreman testified that, at a time within a month prior to the accident, he had instructed the deceased not to fill the tank within 3 feet of the top. The evidence was such as to warrant the jury in finding that the deceased, part of whose duties it was to fill the acid tank in question, had filled it within 8 or 10 inches of the top on the morning of the accident, and that thereby some 12 tons additional weight was put into the tank beyond the amount the foreman had directed to be placed in it, and also that this additional weight caused, or contributed to, the falling of the tank, and that it would not have fallen if the deceased had obeyed the instructions of the foreman not to fill it within 3 feet of the top. The court, as stated above, charged the jury, at the request of the defendant, that, if they found those facts, their verdict must be for the defendant. The question is presented whether this was error.

The plaintiff and his son, the deceased, were both employed by the defendant and did the same work; the father having the night shift and the son the day shift. When either of them left, it was his duty to go up to the tank and measure the acid, and notify the next acid maker how much acid there was in the tank, so he would know what to go by. He would know if it were full, or how many batches he could pump up before it would be filled. This was to be noted on the time sheet when he left. When the father left on the morning of the accident, he told his son how much acid there was in the tank—that it lacked 5 feet of being full. He did not make any memorandum of the amount of acid in the tank, but did leave a memorandum of how much stock had been used and how much was there still to be moved. The only way in which the deceased could ascertain the amount of acid in the tank was by going to the tank upon the roof and making an examination, which he had been accustomed to do. The deceased continued to pump the acid into the tank for two or three hours, and then it fell. The only evidence as to instructions given to deceased was that of the foreman, who testified:

"I told him not to fill the tank within 3 feet of the top. * * * That is all I remember of."

It is claimed by the plaintiff that disobedience of this instruction did not, as matter of law, constitute contributory negligence on the part of the deceased, because the deceased was not given to understand that filling the tank within 3 feet of the top would make it liable to fall. We are cited to the cases of Kellegher v. Forty-Second St., M. & St. N. Ave. R. Co., 171 N. Y. 309, 63 N. E. 1096, and Skaarup v. Stover, 56 Hun, 86, 9 N. Y. Supp. 92, as authorities for the proposition that this charge was error.

We think the charge was correct. It is laid down as a rule in' the Kellegher Case, supra, that it is not for the court to say whether, if the jury believe the facts proven by the plaintiff or defendant, they must find that the accident happened because of the negligence of the plaintiff or the defendant, but that it is for the jury to determine as a question of fact whether the accident happened because of the negligence of the plaintiff or because of negligence of the defendant. In the case at bar the charge of the court went further than did the charge criticised in the Kellegher Case. Here the court charged the jury that, in order to find that the act of the deceased prevented a recovery by the plaintiff, they must find that the act "was the cause, or contributed to the cause of the accident or injury." If the court had merely charged the jury that if they believed that deceased was instructed not to fill the tank within 3 feet of the top, and that, disobeying such instruction, he filled it to within 8 or 10 inches of the top, there could be no recovery, it would undoubtedly have been error under the rule laid down in the Kellegher Case; for then the jury would have been left to pass only upon the credibility of the witnesses, and would not have reached the question of whether or not such act of the deceased caused or contributed to the cause of the injury. We think this distinguishes the charge in the case at bar from the one held to be error in the Kellegher Case. Kleiner v. Third Ave. R. R. Co., 162 N. Y. 193, 56 N. E. 497.

It is, however, urged further that, even if the jury found that the act of the deceased in this respect did cause or contribute to the cause of the accident, it was for the jury to say whether it was a negligent act, and that the court could not say as matter of law that it was a negligent act on the part of the deceased. We think there is no support to this contention. The act of the deceased was voluntary, and in violation of express instructions to the contrary. It appeared without contradiction that it was the duty and custom of the deceased to go to the tank upon the roof to ascertain how nearly full the tank was. We think there can be no doubt but that such act was a negligent act as matter of law. Plaintiff urges that it could not be so held without proof that the deceased knew of the danger attendant upon his disobedience of instructions, and that the jury should have been instructed that they must find that deceased knew of such danger in order to make his act a negligent one. We think this is not so, in view of the fact that he had been expressly forbidden to fill the tank. It was not incumbent upon the defendant to inform him that disobedience to its instructions might result in danger. The deceased had worked in defendant's plant for about two years, was familiar with the work, and we think, under all the circumstances of the case, the court was right in charging the jury that, if they found that the accident was caused wholly or in part by the act of the deceased done in violation of instructions of the defendant, it constituted contributory negligence as a matter of law.

In the Skaarup Case it appeared that the deceased, a boy of 14 years of age, was put to work with another boy sawing a log, which was liable to roll down and cause injury to the boy on the down-hill side, without any warning except an instruction to the deceased boy to stay

on the upper side. While it was held in that case that it was for jury to determine whether the master had in this respect discharged his duty to the boy, it is further to be said that it did not appear in that case that the boys had ever done such work previously, and it appeared that the accident happened while sawing the first log they were set to work upon. We think that case is distinguished in that respect from the case at the bar.

In any event, we are of the opinion that where a master has given to the servant instructions not to do a certain thing in connection with his work, and the servant disobeys that instruction, and such disobedient act causes or contributes to the cause of his injury, he is guilty of contributory negligence as matter of law. If, for instance, a farmer directs his hired man not to carry more than one ton in a certain wagon, and the hired man violates such order and loads the wagon with two tons, and the wagon from overloading breaks down, causing injury to the hired man, his own act is the cause of the injury, and he must be held to be guilty of contributory negligence as matter of law. It is not necessary that the servant be warned of the danger which might result from disobedience, nor that the master should be aware of any likelihood of injury to result from such disobedience. The master may have given the instructions for some other reason than to prevent possible injury to the servant, but we think the reason for giving the instruction is immaterial. It is sufficient that the warning, if obeyed, would have prevented injury.

We also think the court was right in charging the jury that they must be satisfied as to defendant's negligence, outside of the mere happening of the accident. The doctrine of res ipsa loquitur has no application to this case. It was incumbent upon the plaintiff to prove, not only that the tank fell and caused injury to the deceased, but also that there was lack of reasonable care on the part of the defendant, from which they might find that the tank fell. We think, also, the burden was upon the plaintiff to point out with reasonable certainty the particular negligence which caused the accident. This did not mean that the plaintiff must furnish proof which should be absolutely convincing to the jury that the accident was the result of any particular defect, but only such as would enable the jury to find with reasonable certainty that the defendant had in some one manner been negligent.

This leads to the conclusion that the order appealed from must be reversed. The trial court refused to disturb the verdict on the weight of the evidence, or upon any of the other grounds upon which the motion was made, and we therefore should reinstate the verdict of the jury.

The order appealed from should be reversed, with costs, and the verdict of the jury reinstated.

LAMBERT, J., concurs.